EDWIN EINSTEIN, Respondent, v. THE ROCHESTER GAS AND ELECTRIC COMPANY and Another, Appellants.

*Agreement to give a certain proportion of any stock thereafter to be issued — right of a stockholder thereunder and of the assignee of his stock.*

An agreement should be read as of the time it was executed, having in mind the conditions as they then existed.

When a stockholder in a corporation sells his stock therein, he ceases to have any interest in the property of the corporation, or voice in its management, and the person to whom he sells the stock takes his place and becomes entitled to all his rights in the corporation.

By an instrument in writing executed between an individual and a corporation, in consideration of the issue and delivery to such person of $48,000 paid-up capital stock of such corporation, being forty-eight per cent of its capital stock, certain patent rights were transferred by him to it, and the corporation agreed that if at any time its capital stock should be increased (otherwise than for stock issued for cash, paid therefor at the time of such issue, at par, to the extent of $100,000), in addition to its other capital stock, forty-eight per cent of the issue should be issued and delivered to such person, or his successors or assigns, fully paid up, and it was also provided therein that in case of any increase of the capital stock of such corporation for money paid at the time thereof, such person or his assigns should have the right to subscribe to such increase in the first instance on the same terms as the other stockholders.

*Held*, that such agreement treated such person as a stockholder of such corporation owning a certain percentage of its stock, and that it was in that light that the clause in regard to the issuing to him of a proportion of any increase in its stock must be read, and being a stockholder he must have issued to him his proportionate share of any increase in the stock;

That the " successors or assigns " of such person were the person or persons who had succeeded him, or to whom he had assigned his stock in the corporation;

That the agreement was with such person as a stockholder for the purpose of protecting him as such, and upon another succeeding to his stock, his successors or assigns became entitled to the protection which the contract gave to him;

That the forty-eight per cent mentioned in the contract had reference to his proportionate share of the stock as it then stood, and a consent given by such person to the increase of the capital stock of the corporation, without the receipt of his proportionate share of the increase, would operate to change the rate in case of a subsequent increase.

APPEAL by the defendants, The Rochester Gas and Electric Company and another, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 2d day of December, 1893, upon the

decision of the court rendered at the Monroe Special Term, over-ruling the defendants' demurrer to the complaint.

*Edward Harris,* for the appellants.

*George F. Danforth,* for the respondent.

LEWIS, J.:

The demurrers interposed are placed upon the ground that the complaint does not state facts sufficient to constitute a cause of action.  The complaint demands judgment that the defendant, The Rochester Gas and Electric Company, issue to the plaintiff certificates for $480,000 at its par value of its paid-up stock, and in default thereof that the defendants, one or both, be required to pay him that sum.

It appears from the allegations of the complaint that the Brush Electric Company of Cleveland, Ohio, was the exclusive owner of valuable patents and inventions for the manufacture of electricity for electric lighting and other purposes, and was the manufacturer of machines and machinery for producing and using electricity, and was the proprietor of what was known as the Brush electric light and double arc light.  That on the 4th day of March, 1881, it entered into a written agreement with one C. M. Rowley of New York city, by which it gave to him the exclusive license and agency for the sale of the dynamos, electric machines and apparatus made by it, or the patents owned and controlled by it, for electric lighting, etc., in the county of Monroe, State of New York.

This agreement we shall for convenience designate as Exhibit "A," and hereafter refer to it by that name.  On the 19th day of May, 1881, Rowley entered into an agreement with James W. Whitney and George E. Mumford of Rochester, N. Y., in which they agreed to organize a stock company with a capital of not less than $100,000, for the purpose of introducing the Brush electric light in the city of Rochester.  In pursuance of such an agreement they appear to have organized such a corporation, and thereafter, and on the 8th day of June, 1881, Rowley, as party of the first part, entered into an agreement with the corporation so organized, known as the Brush Electric Light Company of Rochester, N. Y., as party of the second part, the material portions of which are as follows:  "Now,

therefore, this agreement witnesseth, that the said party of the first part, for and in consideration of the issue and delivery to him of $48,000 paid-up capital stock of the said party of the second part, being 48 per centum of the said capital stock, and the agreement of the party of the second part that if at any time hereafter the said capital stock of the said party of the second part shall be increased (otherwise than for stock issued for cash, paid therefor at the time of such issue, at par, to the extent of one hundred thousand dollars [$100,000]), in addition to the present capital, 48 per centum of the par value of such increase shall be issued and delivered to said party of the first part, or his assigns, full paid up, has assigned, transferred and set over, and by these presents doth assign, transfer and set over unto said party of the second part, its successors and assigns, the exclusive agency and license in the said city of Rochester and county of Monroe in the State of New York, for the sale and use of the Brush dynamo, electric machines and apparatus made and sold and to be made and sold by, or the patents which are or shall be controlled by the Telegraph Supply Company of Cleveland, Ohio (now the Brush Electric Company), as the same are or shall be held and controlled by said party of the first part hereto under and by virtue of said contract hereto annexed, subject, however, to all the terms and conditions, contained in said contract, so far as the same are applicable to said party of the second part, for and during the said term of 17 years from said 24th of April, 1877, and for and during any renewals or extensions of said patents, or any or either thereof. And the said party of the second part, for itself, successors and assigns, covenants, promises and agrees to and with said party of the first part, his successors and assigns, that in case at any time hereafter the capital stock of said party of the second part shall be increased (otherwise than for cash paid for the said increase at the time, at par, to the extent of one hundred thousand dollars [$100,000]), in addition to the present capital, that then and in that case said party of the second part will issue and deliver to the said party of the first part, his successors or assigns, 48 per centum in amount of the par value, fully paid up, of such increase, as a part of the consideration for this agreement; and in case of any such increase for money paid at the time the said party of the first part or his assigns shall have the right

to subscribe for such increase in the first instance on the same terms as other stockholders." This agreement we shall designate as Exhibit "C;" and hereafter refer to it as such.

Thereafter, and on the 13th day of June, 1881, Rowley assigned all his right, title and interest in Exhibit "A" to the plaintiff, who subsequently, and on November 5, 1881, assigned all his right, title and interest in Exhibit "A" to the Brush Electric Light Company. These assignments, together with that incorporated in Exhibit "C," were subsequently approved by the Brush Electric Company of Cleveland, Ohio.

On the 27th day of February, 1883, the Brush Electric Company of Cleveland, Ohio, the plaintiff and Rowley all joined in the execution of an instrument to the Brush Electric Light Company in which they recite the provisions of Exhibit "C" relating to the increase of capital stock of the company; and also that the purchase and improvement of the water power at the lower falls in Rochester has involved the expenditure of a much larger amount of money than was contemplated, thus requiring an increase in the capital stock beyond the original amount contemplated, and concludes as follows : " Now, therefore, in consideration of the premises and for value received we, the undersigned, assignees of the said Charles M. Rowley of the said contract, and the present owners and holders of the rights and privileges secured to said Rowley in and by said contract, do hereby consent and agree that the said company (referring to the Brush Electric Company of Rochester) shall have the right to increase its capital stock to the extent of $200,000 in cash in addition to the present capital, instead of $100,000, as stated in said contract, they not being required to issue and deliver to said Rowley or his assigns any portion of such capital stock fully paid as stated in said contract, and that said contract may be and is changed and modified in the particulars herein stated and not otherwise."

Thereafter the Brush Electric Light Company of Rochester increased its capital stock in the amount of $150,000, making its total capital stock $250,000.

The complaint further alleges that the Brush Electric Light Company of Rochester continued to do business in that city until about August 1, 1892. That about that time it was thought by the officers, directors and managers of the Rochester Gas Company, the Brush

Electric Light Company, the Edison Electric Illuminating Company and the Rochester Electric Light Company that the interest of the stockholders of each would be promoted by consolidating those companies with a largely increased capital stock and thus obtaining a monopoly of the business of furnishing light to the city and the people of Rochester by either gas or electricity. But the plaintiff's right to forty-eight per cent with any increase in the capital stock of the Brush Electric Light Company furnished an obstacle to the formal consolidation of the four corporations. That thereupon indirect means were resorted to by the directors and managers of the four corporations to accomplish, in fact and effect, a consolidation by putting the property and management of the business into the hands of a new corporation and thus obtain a monopoly of the lighting business in Rochester and yet cut the plaintiff out of his right to the forty-eight per cent of the increase of the capital stock of the Brush Electric Light Company. For the purpose of putting this scheme into execution, on the 11th day of July, 1892, the Rochester Gas Company, the Edison Electric Illuminating Company and the Rochester Electric Light Company entered into a contract of consolidation into a single corporation to be called "The Rochester Gas and Electric Company," organized under chapters 566 and 567 of the Laws of 1890.

The capital stock of this company was fixed at $4,300,000, represented by 43,000 shares of the par value of $100 each. The contract contained a provision that this company should retain in the treasury 12,500 shares of its stock with which the directors were authorized to purchase not less than two-thirds of the capital stock of the Brush Electric Light Company, paying therefor not more than five shares of the stock of the consolidated company for each share of the stock of the Brush Company.

The new company, as organized, issued to the stockholders of the Gas Company 20,500 shares of its capital stock; to the stockholders of the Edison Illuminating Company, 6,000 shares; to the stockholders of the Rochester Electric Light Company, 4,000 shares; and with the 12,500 shares retained it purchased from the stockholders of the Brush Electric Light Company all of the outstanding stock of that company, paying therefor five shares of the stock of the new

company for each share of the stock of the old company. It is alleged that the new corporation immediately commenced business, took possession of the property of the old corporations, and that its stock is now worth par.

The plaintiff claims that the transaction was, in effect, an increase of the capital stock of the Brush Electric Light Company in the sum of $1,000,000, that he was entitled to forty-eight per cent, amounting to $480,000 of such issue, and that the defendant should deliver to him that amount of stock, or pay him therefor.

Assuming that the plaintiff is the owner of Exhibit " C," and entitled to all the rights and privileges secured by it, we are brought to a consideration of those rights and privileges. What are they? As construed by the plaintiff, the contract entitles him to recover forty-eight per cent of any increase in the capital stock of the company over and above the $250,000 authorized by him, whether he is or is not a stockholder. His position may be made more clear by illustration. The original stock was $100,000; of this, $48,000 was issued to Rowley, and $52,000 retained by the other stockholders. Suppose the stockholders were of the opinion that their property was worth $500,000, and should decide to increase their capital stock to that amount, each person holding a share of the old stock would be entitled to five shares, so that Rowley, holding $48,000 of the old stock, would have his increased to $240,000, and the other stockholders, who held $52,000 of the original stock, would have $260,000; but, under the contract, Rowley is also entitled to forty-eight per cent of the increase; there being an increase of $400,000, his proportion thereof would amount to $192,000, which must come out of the stockholders, and reduce the amount going to them in that sum. As stockholder, he gets his share of the increase, and as owner of the contract he gets forty-eight per cent in addition, making about three-fourths of the entire increase. Rowley was the owner of forty-eight-one-hundredths of the plant, property and business of the corporation, which we have assumed was worth $500,000. Suppose that Rowley had sold his stock before the increase, and received therefor his proportion, $240,000, the persons who purchased from him would stand in his place and be entitled to their proportion of any increase in the capital stock which should be made. Assume an increase to have been made as above stated: Row-

ley would still be entitled to demand an additional $192,000, even though he had ceased to be a stockholder and had received his forty-eight-one-hundredths of the entire value of the property of the corporation.

Again, take the figures as actually presented in this case: Rowley received $48,000 of the capital stock; the other stockholders received $202,000, making a total of $250,000. Assume that the capital stock was increased in the sum of $1,000,000, making a total of $1,250,000 : Of this sum, Rowley, if he still held the stock originally issued to him, would receive $240,000, and the remaining stockholders $1,010,000. But of the $1,000,000 increase, he is entitled to his forty-eight per cent, amounting to $480,000, which must come out of the stockholders. He thus gets not only his forty-eight per cent of this increase, but in addition thereto his proportionate share as stockholder.

These results are, to say the least, extraordinary, and cause us to hesitate to assent to such an interpretation of the instrument. Is it possible that the agreement was ever so understood by the parties? Is such a conclusion rational and logical? Let us see. The agreement should be read as of the time it was executed, having in mind the conditions as they then existed. The Brush Electric Light Company had not then commenced business. By this agreement Rowley conveyed to it the right to use the Brush patents and machines. The company in turn transferred to Rowley his $48,000 of the capital stock. The stock of itself had no value. Its value consists in the property and business which it represents. The value of the property, or the magnitude of the business, is not dependent upon the amount of the stock which has been issued to represent it, and its actual value is the same before as it is after an increase of the stock. Fifty-two thousand dollars of the capital stock was held by the other persons. Rowley was in the minority, and it was but natural that he should wish to guard himself and prevent his stock from being depreciated. He, as we have seen, was the owner of forty-eight-one-hundreths of the entire property of the corporation. If the majority of the stockholders should see fit to increase the capital stock, without paying therefor, and issue it to themselves or others, in common parlance, to water it, the effect would be to reduce his interest in the property of the corporation. He had the right to guard against this.

Consequently it was incorporated into the agreement that in case of an increase he should have issued to him forty-eight per centum of such increase, which, at that time, was his proportionate share. The agreement treats him as a stockholder owning that percentage of the stock, and it is in that light that the clause in question must be read. Being a stockholder he must have issued to him his proportionate share of any increase in the stock, and thus preserve to him his share or interest in the property of the corporation, and evidently the agreement only contemplates him as a stockholder. The property of the corporation is represented by stock. If Rowley should sell his stock he would cease to have any interest in the property of the corporation or voice in its management. As soon as he sells the purchaser takes his place and becomes entitled to all of his rights in the corporation. Such purchaser is then interested in maintaining his proportionate share of the stock, and in receiving his just proportion of any new stock which may be issued. This the parties evidently had in mind when the provisions of the contract were framed, for we find that in case it should be determined that the capital stock should be increased " that then, and in that case, said party of the second part will issue and deliver to the said party of the first part, *his successors or assigns*, forty-eight per cent in amount," etc. Who are Rowley's *successors or assigns* here referred to ? Can they be other than those who have taken his place in the corporation, the person or persons who have succeeded to, or to whom he has assigned, his stock ? We think not. The purchasers of this stock in turn became entitled to the percentage. If one individual purchased his entire stock the percentage would have continued the same.

Had he purchased but a portion thereof his proportion, of course, would be rated accordingly.

If we are correct in this view the agreement was with Rowley as a stockholder for the purpose of protecting him as such, and upon another succeeding to his stock, his successors or assigns in turn became entitled to the protection which the contract gave to him.

The forty-eight per cent mentioned in the contract has reference to his proportionate share of the stock as it then stood, and as it was then, doubtless, expected to remain. Had he sold part of his $48,000 he could not expect his percentage to remain the same, and

by consenting to the increase of the capital stock, without the receipt of his proportionate share of such increase, operated to change the rate in case of a subsequent increase. If, as is claimed, that the transaction with the Rochester Gas and Electric Company was in effect an increase in the capital stock of the Brush Electric Light Company in the amount of $1,000,000, and Rowley still owned the original stock issued to him, he received his ratable proportion of the new stock. If he had transferred his stock to others they received it in his stead.

We have thus far considered the provision of the contract pertaining to an increase of the stock when no money is paid, when the increase is in the nature of a stock dividend.

It appears to us that our view is made more clear by the provision which follows pertaining to an increase of stock for money paid. "And in case of any such increase for money paid at the time, the said party of the first part, or his assigns, shall have the right to subscribe for such increase in the first instance on the same terms as other stockholders."

In this provision we have no reference to Rowley's forty-eight per cent, and for reasons which are obvious. If cash is paid for the stock it would go into the treasury of the company, and Rowley would thus get his proportion of the benefits. In case the increase is for cash, he is not given forty-eight per cent thereof, but is given the right to subscribe for such increase on the same terms as the other stockholders. He is thus placed on an even footing with them, and given the power to maintain his proportionate share in the company's property.

But, assuming that Exhibit "C" should be construed as contended for by the plaintiff, we do not understand that there has been an increase of the capital stock of the Brush Electric Light Company. It is not claimed that there has been any such increase in fact. It is only claimed that the effect of the transaction described is the same as if there had been an increase, and that this plan was resorted to for the purpose of preventing the plaintiff from acquiring any rights under Exhibit "C." The question presented is one of right under that contract, and if the stockholders had the right to do what they did do, their intent becomes immaterial.

The Brush Electric Company has not become merged in the new

company, for it is alleged that directors have been elected, and a separate corporate existence maintained.

It was not a party to the consolidation agreement upon which the new corporation was organized. Each individual stockholder sold his stock to the Rochester Gas and Electric Company, each receiving for each share so sold five shares in that company. This they were given the power to do by the express provisions of Exhibit " C." The business of the two corporations was similar. The new corporation had the power to purchase the stock of the old corporation, and its president or other officers were eligible to become officers of such corporation the same as if they were individual stockholders therein. The statute provides that " Any stock corporation, domestic or foreign, now existing or hereafter organized, except moneyed corporations, may purchase, acquire, hold and dispose of the stocks, bonds and other evidences of indebtedness of any corporation, domestic or foreign, and issue in exchange therefor its stock, bonds or other obligations.   *   *   *   When any such corporation shall be a stockholder in any other corporation as herein provided, its president or other officers shall be eligible to the office of director of such corporation, the same as if they were individually stockholders therein, and the corporation holding such stock shall possess and exercise in respect thereof, all the rights, powers and privileges of individual owners or holders of such stock." (Laws of 1892, chap. 688, § 40.)

The plaintiff is not alleged to have been a stockholder in the old corporation. He, therefore, had no voice in its management or control, nor right to share in any of its property, assets or profits of its business.

It is, therefore, not apparent that he suffered by what was done.

The interlocutory judgment should be reversed, and the defendant's demurrers sustained with costs, but with leave to the plaintiff to amend his complaint within twenty days upon payment of the costs of this appeal and of the demurrers.

DWIGHT, P. J., and BRADLEY, J., concurred; HAIGHT, J., not taking part.

So ordered.